**DARDANELL COMPANY TRUST, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 6–85–246.**

United States District Court, D. Minnesota, Sixth Division.

April 25, 1986.

John R. Koch, Reichert, Wenner, Koch & Provinzino, St. Cloud, Minn., for plaintiff.

Stephen G. Fuerth, Beth A. Sabbath, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Carol B. Swanson, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

DEVITT, District Judge.

In this quiet title action, the plaintiff questions the validity of nominee liens filed against some of its property by the United States pursuant to I.R.C. § 6321. The government has contended that taxpayers John A. and Angela Ellering, husband and wife, fraudulently transferred property to plaintiff, a Minnesota business trust, in order to avoid paying their income tax liability.

On March 21, 1986, this court provisionally granted defendant's motion for summary judgment. *Dardanell Company Trust v. United States of America*, 630 F.Supp. 1157 (D.Minn.1986). In granting defendant's motion, the court found that the Ellerings had been rendered insolvent as a result of two transfers of real property to plaintiff on November 17, 1982, and that the transfers were accordingly fraudulent pursuant to Minnesota's Uniform Fraudulent Conveyance Act, Minn.Stat. §§ 513.-20–.32 (1984). *Id.*

The Ellerings opposed defendant's summary judgment motion by filing a joint affidavit, dated February 19, 1986, in which they claimed to have retained $100,500 worth of assets—which amount exceeded their tax liability—at the time of the transfers.[1] The court disregarded this affidavit since it was unsubstantiated and conflicted with the Ellerings' prior deposition testimony. *Id.* at 1160. The court did, however, stay entry of the summary judgment for ten days during which time the Ellerings could, if they chose, file evidence supporting the assertions in their affidavit. If the plaintiff now establishes that the Ellerings were not rendered insolvent as a result of their property transfers, then defendant's summary judgment must necessarily be vacated.

The Ellerings' affidavit identified three classes of property allegedly retained after the transfers: life insurance, stock and miscellaneous personal property. The Ellerings' two life insurance policies were levied upon by the Internal Revenue Service and surrendered for their cash value, a total of $6,665.[2] The major item of personal property listed, patrons' equity credits, was also levied upon, and sold for $15,110. *Id.* at 1160 n. 2. The only remaining issue is the value of the Ellerings' stock holdings and other personal property on the date of the transfers. *Id.* at 1160.

The plaintiff submits three appraisals of the remaining personal property that the Ellerings testified to owning on the date of the transfers, November 17, 1982. The

---

1. *See Dardanell Company Trust v. United States of America*, 630 F.Supp. 1157, 1160 n. 2 (D.Minn.1986); *Dardanell Company Trust v. United States of America*, No. Civ. 6–85–246 (D.Minn. Feb. 21, 1986) (St. Paul Clerk's Entry No. 41).

2. In an undated letter to the court, which was received on April 3, 1986, plaintiff's counsel stated that the "Ellerings further indicate[d] that they have another policy of insurance with the Women's Catholic Order of Foresters having a face value of $2,500.00." No competent evidence has been offered to establish the exist-

appraisals are within $125 of each other and average $3,125.[3]

The plaintiff also submits one affidavit and one unsworn statement of Royce N. Nies, a licensed stockbroker and associate vice president and assistant manager of Dain Bosworth Incorporated.

In his affidavit, Mr. Nies testifies that on November 17, 1982, the Ellerings owned stock in Donovan Co. Inc. worth $850.00. Mr. Nies crossed out references to certain other stock which the Ellerings had claimed to own, *viz.* Criton Corp., Health Techna Corp., Marley Co. and Wylain Inc.[4] In contrast, Mr. Nies' later unsworn statement, seems to imply that the Ellerings did in fact own securities in these corporations on the day of the transfers and that they had a value of $13,485.[5]

ence, ownership, or cash value of this policy on November 17, 1982.

3. Defendant attacks these affidavits as biased, not in compliance with the court's order of March 21, 1986, and of little value since none of the appraisers had occasion to view the items being appraised. The court does not reach the issues raised by the government.

4. In their affidavit dated February 19, 1986, the Ellerings did not claim to own stock in Marley Co. on November 17, 1982. Neither Mr. Nies' affidavit nor statement contains any reference, deleted or otherwise, to stock in Grain Belt Breweries, Inc. which the Ellerings had claimed to own on November 17, 1982.

5. Mr. Nies' affidavit and statement read, in their entirety, as follows:

I.
(Affidavit)
March 31, 1986
To Whom It May Concern:

I am a licensed and bonded stock broker and handled the sale of the following shares of stock which were the property of John A. and Angela Ellering on November 17, 1982. To the best of my knowledge and belief I state that the stocks were worth $850.00 on November 17, 1982. Copies of the statements from the sale of the stock is attached.
Donovan Co. Inc.
Criton Corp.
Health Techna Corp.
Marley Co.
Wylain Inc.

/s/ Royce N. Nies
Stock Broker

Subscribed and sworn to before me this 31st day of March, 1986

Accompanying Mr. Nies' affidavit are copies of the Ellerings' brokerage statements for May through August 1984 and December 1984. These statements indicate that the Ellerings may have owned stock in the following corporations during this period: Donovan Co. Inc., Criton Corp., Health Techna Corp., Wylain Corp., and Marley Co. Neither these statements nor the unsworn statement of Mr. Nies establish that the Ellerings owned these securities on November 17, 1982, or their value on that day. The brokerage statements bear no relation to the date of the transfers. Mr. Nies' affidavit clearly, and under the penalty of perjury, establishes that the Ellerings owned only $850.00 worth of Donovan Co. Inc. stock on the date of the transfers. The fact that Mr. Nies specifi-

/s/ Thomas B. Erzar
Notary Public
[Sherburne County, Minnesota Commission Expires May 30, 1986]
II.
(Statement)
Dain Bosworth Incorporated
Inter-Regional Financial Group
April 7, 1986
To Whom It May Concern:

To the best of my knowledge, this list represents the value of common shares on or about November 17, 1982.[sic], owned by John A. Ellering.

1) 100 Shares of Donovan Company $8.50 per share ($850).

2) Health Tecna [sic] changed its name to Criton Corporation on 7-1-80. On 10-1-82, Criton Corporation reported that the majority of stock was acquired by a wholly-owned subsidiary of Dyson-Kissner-Moran Corporation. Stockholders of Criton Corporation received $46 cash per share of common on 1-28-83 which the Ellering's had not responded to ($3,450).

3) On 5-6-80, Wylain, Incorporated common was merged into Marley Company Series A $3.45 preferred. On June 29, 1984, we exchanged 300 shares of Marley Company $3.45 Series A preferred for $33.45 as per a redemption that was supposed to be redeemed in 1981 ($10,035).
Sincerely,
/s/ Royce N. Nies
Associate Vice President/
Assistant Manager
RNN:ly
Norwest Center/Suite 200/P.O.Box 1337/
St. Cloud, Minnesota 56301-1337
(612)251-4213

cally deleted the references to other securities purportedly held on that day convinces the court that the Donovan Company stock was the extent of the Ellerings' portfolio on November 17, 1982.

■ Mr. Nies' later unsworn statement is deficient for the following reasons: 1) it is not a sworn affidavit, as required by this court's order dated March 21, 1986; 2) it fails to establish the Ellerings' ownership on November 17, 1982, of any of the securities mentioned; 3) it fails to establish the November 17, 1982, value of any of the securities mentioned, with the possible exception of the Donovan Company stock; and 4) in addition to being less credible than his sworn statement, it is unsupported by any evidence or documentation tending to establish it as a credible, worthwhile document.[6] Further, Mr. Nies' unsworn statement tends to conflict with information contained in the brokerage statements which accompanied his affidavit.

This court's March 21, 1986, order established very specific requirements for proving the nature and value of the Ellerings' stock holdings on November 17, 1982. *Id.* at 1160. Though specific, the requirements were not unduly burdensome or difficult to comply with, especially in light of the fact that the Ellerings used the services of a stockbroker who would have copies of the Ellerings' pertinent records from November 1982.[7] The court finds, therefore, that Mr. Nies' sworn affidavit is the only competent evidence establishing the Ellerings' November 17, 1982, stock holdings. On that date, the Ellerings' portfolio consisted of $850 worth of Donovan Company stock.

The Ellerings' life insurance policies have already been surrendered for their cash value, a total of $6,665. *Id.* at 1160 n. 2.

The Ellerings' patron equity credits were sold at a public sale for $15,110. *Id.*

■ Based on the information now before it, the court finds that the Ellerings retained assets of the following values on the date of their property transfers to plaintiff, November 17, 1982:

| | |
|---|---|
| Life Insurance | $ 6,665.00 |
| Stock | 850.00 |
| Patrons Equity Credits | 15,110.00 |
| Miscellaneous Personal Property | 3,125.00 |
| TOTAL | $25,720.00 |

This amount falls far short of the $100,500 value claimed by the Ellerings in their affidavit of February 19, 1986. The court accordingly finds that the Ellerings' affidavit was filed in bad faith or solely for the purpose of delay, and that the plaintiff, the party which employed the affidavit, is subject to sanctions pursuant to Fed.R.Civ.P. 56(g).

■ The value of the Ellerings' assets on November 17, 1982, was also less than their outstanding tax liability at the time, $35,695.35. The court accordingly finds that the Ellerings' transfers of property to plaintiff rendered them insolvent within the meaning of Minn.Stat. §§ 513.21(1), 513.23 and 513.28 (1984), and that the defendant is therefore entitled to entry of final summary judgment in its favor.

Based upon the foregoing, and all of the files, records and proceedings in the case,

IT IS ORDERED:

1. Defendant is entitled to sanctions, as against plaintiff, pursuant to Fed.R.Civ.P. 56(g). The court will set the amount of sanctions at the time it rules on defendant's motion for attorney's fees, now pending before the court.

---

6. While offered to establish the validity of the Ellerings' February 19, 1986, affidavit, Mr. Nies' unsworn statement emphasizes its inaccuracy. In their affidavit, the Ellerings claimed to own stock in "Criton Corporation, Donovon [sic] Companies, Wylan [sic], Inc., Health Techna Corporation and Grain Belt Breweries, Inc." Based upon Mr. Nies' unsworn statement, it would have been impossible for the Ellerings to own stock in Health Techna Corporation and Wylain Inc. on November 17, 1982. Further, none of the statements or documents filed by Mr. Nies makes any reference to stock in Grain Belt Breweries, Inc.

7. Neither plaintiff nor the Ellerings objected to the requirements set out in the order. Plaintiff's counsel did request additional time to submit information to the court; this request was granted.

2. Defendant's motion for attorney's fees will be considered on briefs, without oral argument. The hearing scheduled for May 12, 1986, is stricken from the calendar.

3. The clerk of court is directed to enter judgment in favor of defendant.